Good morning. Good morning, Your Honors. My name is Tom Patton. I represent the appellant, John Berkey. I would like to ask for three minutes of rebuttal time. Your Honors, the District Court's order dismissing Mr. Berkey's habeas petition as moot needs to be reversed because the possibility that Mr. Berkey could take a judgment from the habeas case, return to his sentencing judge, Judge Oliver in the Northern District of Ohio, and ask pursuant to 18 United States Code Section 3583E2 or E1 to have either the conditions of his supervised release modified or the length of the term of his supervised release reduced prevents the case from being moot. It presents a live case or controversy. Let me go to the end of this, which we're not supposed to do. I hesitate to do this with the Justice of the Supreme Court. Can relief be granted by a habeas judge, by the habeas court here? And I couple that with an observation that I think your client can petition the sentencing judge for relief. Well, Your Honor, it's undoubted that the sentencing judge must be the judge who ultimately would make the decision of whether or not Mr. Berkey's term of supervised release should be reduced. Then why wouldn't our ruling just be advisory? I just don't understand at all why your client shouldn't go to the sentencing judge. Why get an intermediate, in effect, advisory opinion of some kind? I don't understand. Well, Your Honor, I would say it's not advisory. It isn't determinative. It's not determinative. This court can't say, reduce that sentence. That is true, Your Honor, but that's no different than in the Jackson case that this court recently decided or the Cotman case that Jackson affirmed. The Supreme Court has given us more direction since Cotman decided. That's correct, Your Honor, but even Jackson, which this court decided after Johnson, Jackson specifically said that they found that Cotman was still viable because the chance that the district court on remand might reduce the term of supervised release prevented mootness. But that was because it was a sentence that was being attacked. And if the sentence is vacated, then the ramifications of that could be a different imprisonment and different supervised release. Here we have a sentence that the sentencing judge imposed and that your client is serving. Why would you think that the sentencing judge would say, oh, based upon the fact that the prison didn't allow you this early release, I think maybe I'm going to change the sentence that I thought was appropriate. I mean, it seems like you have to show not only that it's possible or it's speculative. You have to show that that's likely. And I don't see how, when you're not attacking a sentence, you're not attacking a conviction, you're attacking something that the Bureau of Prisons did after the fact, that you show it's likely, especially in light of Johnson, that the sentencing judge is going to say, oh, please, I'll obviously change my mind as to what you should serve. Well, Your Honor, respectfully, the Second Circuit in Levin v. Apker, the Ninth Circuit in Mujahid v. Daniels, the Fifth Circuit in Johnson v. Pettiford, all post-Johnson, all in 2241 cases where the prisoner was bringing a 2241 challenge to the execution of his sentence, challenging the way the Bureau of Prisons executed the sentence, arguing that the Bureau executed the sentence in a way that caused that person to be over-incarcerated. The Ninth, Fifth, and Second Circuit all found that the possibility that the habeas petitioner, the prisoner, could take a win in the habeas case and then go to his sentencing judge and ask for a reduction in the term of supervised release or the conditions of supervised release was not moved. But you have that now. You had a report and recommendation by the magistrate judge that said improper procedurally and I recommend he should be released. And then he was released. And all that happened was that that report and recommendation was then going to the district court for some kind of blessing. And the district court said, you know, it's already been decided. You don't need me. You have everything you need now, as Justice O'Connor said, to go to Ohio. If we say, oh, it wasn't moot, and we send it back so the district court stamps the R&R with approval, what does that do? You already have something. Well, Your Honor, if my friend is willing to stipulate to this court that if Mr. Berkey goes to the Northern District of Ohio and says the magistrate judge, Judge Baxter, found I should have been released earlier and doesn't want to try and argue the merits of that, we'll take that. But I don't believe that my friend will make that stipulation because I believe the reason they released him early is so they want to say it's moot and then say, well, that's just a report and recommendation that's not been upheld by the district court so it's not binding. Well, let's go back a minute. Your client is presently released. Isn't that correct? That's correct, Your Honor. And this court cannot order the sentence changed. He has to go to the sentencing judge. That's correct, Your Honor. Why not do that? I just don't understand that. If he goes to the sentencing judge and there has not actually been a final determination that he was actually over-incarcerated, then he doesn't have, then you'd have to relitigate in front of the sentencing judge whether or not he was actually over-incarcerated. It is the judgment in the habeas case that he should have been released earlier, that the Bureau of Prisons violated the Administrative Procedures Act. Well, the sentencing judge can consider that. Well, Your Honor, again, if my friend is willing to say that the – It doesn't make any difference whether your friend is willing to say it or not. The sentencing judge can consider what happened. Obviously, the sentencing judge, if John files a petition, he's now been on supervisory release for over a year. So even under 3583E2, since he has a year on supervisory release, he can ask for a reduction in time. And the Supreme Court has said supervisory relief is entirely different from parole. That's correct, and there's reasons for why that. There's different, you know, it serves different purposes. It serves different purposes, and the court said if there is over-incarceration, it is not automatic that you basically subtract the over-incarceration time from the supervisory release time, but then made clear that the district – the sentencing judge would have the discretion to reduce that time. Now, 2241 petitions have to be filed in the district in which the inmate is housed. That's the only district in which venue is proper. That is very rarely going to be within the district where the person was sentenced. And even if it's in the district where he was sentenced, 2241 petitions do not automatically get put back to the sentencing judge the way 2255 petitions do. So under the government's position, if an inmate would be lucky enough to be housed by the Bureau of Prisons in the district in which he was sentenced and was lucky enough to have his 2241 petition put in front of the same judge that sentenced them, then their mootness argument would fail because that judge would have the authority to reduce the term of supervised release. But a judge having the authority is not the test. The Supreme Court test under both Lewis and Spencer is that it is likely to result, and whether the other courts have said possible, that really isn't controlling on us. The Supreme Court has said likely. And in Spencer, they didn't buy certain arguments where it was a matter of speculation or conjecture. Isn't that controlling that the Supreme Court has said it is likely, that the actual injury is likely to be redressed by a favorable judicial decision? So you have to show that that district court judge approving the report and recommendation was likely to be redressed or that that would redress the injury. How can you show likelihood here? Even if it were in the same jurisdiction, how do you show likelihood? Your Honor, this court in Jackson, after having gone through Johnson and Johnson's holding and applying it to Cottman, said that even if the person is released from custody, serving a term of supervised release, and is challenging the length of the sentence, that's not moot because the collateral consequence of potentially, likely having the term of supervised release shortened. Because they were challenging the sentence. That's different. If you undo the sentence and you vacate it, there is a likelihood that if something was wrong at the sentencing and the offense characteristics or the criminal conduct was calibrated improperly, the sentencing judge is going to say, oh, you know what? I've been told it was wrong. I'm going to redo it. I'm not going to do the same thing. But this is different. But if the challenge to the sentence is simply the length of the incarceration part of the sentence, say the person is challenging the application of a particular enhancement under the guidelines, that doesn't say anything about the length of the term of supervised release per se. But it could. But if you take your imprisonment down from 60 months to 40 months, you might say, well, you know what? Looking at that, I'm going to give two years' supervised release instead of three. That's correct. There's a likelihood there that doesn't exist here. But I would say there's no functional difference between that situation and the situation where the sentencing judge is presented with the facts that under the sentence I imposed, if the Bureau of Prisons would have properly executed that sentence, this man would have served 12 months less in prison. Based on that, just like he might if a court of appeals tells him that the length of the sentence he or she imposed was too long, just as that judge on remand might say, you know what? He got too much time. He served too much time. I'm going to reduce his term of supervised release. There's no functional difference when that finding of over-incarceration is due to the Bureau of Prisons not executing the sentence properly versus the district court improperly applying the guidelines. Would there be any impediment to your or some other attorney going before the sentencing judge and asking for relief in this case? There's nothing that prevents it, Your Honor. But again, unless there is a final judgment, finding that he was over-incarcerated, you have to run the risk of re-litigating that entire issue in front of the sentencing judge. But wouldn't the finding be not that he was over-incarcerated but that the Bureau of Prisons retained the discretion, whether they liked it or not, to release him early? And isn't that even more remote because it was a discretionary matter with the Bureau of Prisons? Not at all, Your Honor. And Judge Baxter talked about that specific fact in the report and recommendation because the government argued to Judge Baxter, well, if you're going to grant the writ, you should send it back to the Bureau of Prisons so they can exercise their discretion. But what Judge Baxter found based on the record was the Bureau of Prisons does not exercise any discretion on an individual case basis. If you meet the requirements of the program, you get released. If you don't meet the requirements, you don't get released. And in fact, that was talked about in the Lopez versus Daniels case in front of the Supreme Court where the Supreme Court specifically discussed the categorical approach the Bureau of Prisons was taking. Any other questions? Thank you very much. We'll have you back on rebuttal. Ms. Irwin. May it please the Court, Laura Irwin from the U.S. Attorney's Office in the Western District, on behalf of the appellee in this matter, the Director of the Bureau of Prisons. The district court in this case correctly ruled Mr. Berkey's 2241 petition moot because he presently has no injury likely to be addressed by a favorable judicial decision. Judge Siric, I'd like to start with your question, which is where are we under this statute? Where are we at the end of the day? And I'd like to start with 2241 itself. Subsection C provides that the writ of habeas corpus shall not extend to a prisoner unless, subpart 3, he is in custody in violation of the Constitution or laws or treaties of the United States. Mr. Berkey is no longer in custody of the Bureau of Prisons and therefore under the statute itself he's not entitled to any relief. He received the only relief he requested in his 2241 petition, which was I would like to be released from the custody of BOP. Furthermore, under 2241- If he was challenging his conviction or his sentence, there would be collateral consequences under the case law sufficient for this not to be moot. Isn't that correct? That's correct, and that's one reason why I'd like to mention the Jackson decision, which Mr. Berkey relies upon heavily. That was a direct appeal, and as you've noted, Judge Rendell, it was a direct appeal in which this court allowed Jackson in supplemental briefing to expand her requested relief to review the reasonableness of her supervised release. That's why that case wasn't moot. If you look at footnote 4, that explains why this case is completely different than Jackson, and Jackson just doesn't help Mr. Berkey. He presently has no injury. He received the only relief he requested, and there's nothing else that the habeas court back in Pittsburgh or this court can offer him in terms of relief. And turning to your second question, Judge Rendell, that you raised about likely to be addressed by a favorable judicial decision, you mentioned the Spencer case, and we believe that that is the answer to this case. In that case, the Supreme Court looked at four alleged injuries in fact that he claimed he would have from his parole revocation. One was I could use it in a future parole proceeding, I could use it in a future criminal action, et cetera, et cetera. And the Supreme Court looked at each of those and said each of those decisions in the future, putting aside the fact that they're in the future and that makes them speculative on their own, but each of those decisions by a future court turns on the exercise of discretion, and because of that, it's not likely to be addressed. When you take that full basket of discretionary decisions, it becomes too speculative, and that's what happens here. What Mr. Berkey can do is he can go back to his sentencing court. He has a remedy, which I think is an important part of this case. He is not left without a remedy. He can go back to his sentencing court under 3583E, and under that provision the sentencing court can look at the factors that the statute provides, which are some of the 3553A factors, what the defendant's conduct has been, what he's done since he's been on release, and the interest of justice to decide under that discretionary paradigm whether or not he qualifies. And you're absolutely right, Justice O'Connor. He has what he needs. He has the R&R, and while I appreciate Mr. Patton wanting to be my friend, I don't know that I can stipulate to the things he wants to stipulate with right now, but the fact remains he has the order from Magistrate Judge Baxter. He can take that back, and to date he has not done so. Is Cotman still good law on this circuit? I think under Jackson part of it is. I think the part of Cotman that's still good, as the Jackson court discussed, was that there is this possibility under 3583E that there can be a reduction in your sentence because of overservice of time. But again, it's a discretionary decision. It's not Mr. Patton wants to argue that any sentencing court, upon hearing that BOP held a prisoner too long, would automatically reduce his sentence. And I think this is my segue into those cases that he cites from the other circuits where they have found these cases not to be moot. I would strongly urge this court to take a close look at those cases because they do not undertake this mootness analysis. They don't take 2241 and compare it to mootness and what mootness is. Present injury likely to be addressed. The analysis in those cases is very, very short, very, very brief, and they basically turn on the availability of 3583E without a discussion of how do you get there. And once you get there, then you have these equities, which, again, Mr. Patton wants his court to believe that Mr. Berkey is entitled to a full year. The regulation allows for up to a full year. In fact, he may have gotten more time, he may have gotten less time, but the fact remains that the only thing that the district judge found was a procedural error. There was no substantive error found, and he got the relief he requested. So when we go back to the sentencing court, there are so many other things to be considered as to whether or not he's going to be entitled to a reduction in his supervised release. You know, three prior convictions for drug felonies. He got the RDAP release once before, six months. He violated. His instant offense occurred while he was on that supervised release. So when you look at that amount of information, and then, of course, any equity analysis requires considering how it impacts the other party, and when you look at what BOP's interests are, this mootness issue can be problematic from many perspectives because it would apply to any type of claim, whether it's good conduct time, a DHO hearing that was apparently incorrect, that those cases never end until a defendant apparently decides to go back to his sentencing court under 3583E. Can I ask you, the Bureau of Prisons policy, the way the statute is written, they may permit early release, which then, again, seems to me to put it even more remote because it's a possibility that they would have even if this procedural flaw had not occurred. Is it a may, or do they routinely, if you go through this program, you are entitled and you get early release? My understanding is that it's still discretionary, and it's the whole range of a year. For example, in 2008, the average amount of time was, I believe, 7.6 months. But keep in mind that in this case, what we're looking at is someone who's gone through the RDAP twice. It's the second time around, and that's what he's hung up on. But we fully believe that he can go back to his sentencing court, show him or her the R&R, and argue the rest of the things that are permitted under 3583E to see whether or not he's, in fact, entitled to a reduction of his term of supervised release. Good. Any other questions? If there are no further questions, I will. Thank you very much. We would ask that the Court affirm the ruling of the District Court. Thank you, Ms. Irwin. Thank you. Mr. Patton. Judge Rundell, as to your last question about the statute being May, I would direct you to pages 13 and 14 of the appendix where Judge Baxter specifically finds that the way the Bureau of Prisons actually administers the RDAP program is by creating a categorical approach such that if an inmate meets all the requirements to get into the program and successfully completes the program, they get the time reduction. Some time reduction. Some time reduction. It can't be more than a year. And the Bureau of Prisons, as a practical matter, the way they follow their policy statements does not engage in any further individualized decision as to whether this person really should or should not be released. As far as the in-custody requirement, the in-custody requirement only must be met at the time the habeas petition is filed. John was in custody at the time he filed the petition. Plus, being on supervised release is counted as being in custody for purposes of habeas cases. The only reason John requested release as his remedy was he filed this petition in July of 2006. He still had well over a year to go on his sentence. I must disagree with the government when it says that the cases that I have cited in my brief, Mujahideen, Levine, and Johnson, which are all 2241 cases, all that post-date Johnson, and all that find that the inmates released from incarceration does not moot the 2241 petition, are not well-reasoned. Each one of those three cases directly addresses the mootness issue. Each one of those cases is indistinguishable. In Mujahideen, the inmate was challenging the way the Bureau of Prisons calculated his good credit time. In Levine, the inmate was challenging the Bureau's refusal to place him in a halfway house when he felt that they should. Johnson does not just say it was a general challenge to the way the Bureau of Prisons accredited his sentence. It did not get any more detailed than that. But each one of those three courts specifically addressed the mootness argument raised by the government and rejected it. If this court upholds the district court's finding, it will be creating a split in the circuits. And the government has not cited a single reported case that has found the release, an inmate's release from custody, while they're still serving supervised release, as saying it is moot by the person's release from custody. They haven't cited one reported case. Now, they cited some unpublished decisions from this court that Judge McLaughlin had ruled on, excuse me, had cited in his memorandum order. But the government has not cited a single reported case that supports their position on the mootness. We have cited multiple ones that deal with 2241 and multiple ones that were on direct appeal. In Levine, was the mootness issue really engaged? Absolutely. Was it briefed by the parties? Yeah, it was not briefed by the parties because it came up, I believe, at oral argument that the inmate had been released. But the Second Circuit engages there's a specific heading of the opinion dealing with mootness and dealing with that mootness. And they, in fact, found in favor of the petitioner who, even though he had been released from incarceration and was serving his term of supervised release. Good. Thank you very much, Mr. Patton. Thank you, Your Honors. The case was very well argued. We will take the matter under advisement.